UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY WARD,

        Petitioner,                        Civil Action No. 2:09-cv-12669

v.                                      HON. LAWRENCE P. ZATKOFF

THOMAS BIRKETT,

        Respondent.

_____/

**OPINION AND ORDER DENYING
PETITION FOR A WRIT OF HABEAS CORPUS AND
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY
BUT GRANTING PERMISSION FOR AN APPLICATION
FOR LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

## I.  INTRODUCTION

This is a habeas case filed by a Michigan prisoner under 28 U.S.C. § 2254.

Petitioner Anthony Ward is incarcerated by the Michigan Department of Corrections,

currently housed at the Central Michigan Correctional Facility in St. Louis, Michigan.  He

is serving concurrent prison terms of eighty-one months to eighteen years for first-degree

criminal sexual conduct (CSC I) and eighty-one months to fifteen years for five counts of

second-degree criminal sexual conduct (CSC II).[1]  Petitioner's convictions occurred on

August 14, 2003, following a jury trial in the Circuit Court in Wayne County, Michigan.

He was sentenced on September 12, 2003.

_____

[1]As will be discussed, *infra*, Petitioner was resentenced in January 2008.  The
stated sentences are a result of the resentencing.

On July 7, 2009, Petitioner filed his Habeas Petition, *pro se*, challenging the constitutionality of his convictions.  He also filed a Motion to Stay.  He asked the Court to stay his case because his appeal remained pending in the Michigan Supreme Court.  Pet'r's Mot. for Stay, July 7, 2009, ECF No. 3.  The Court granted the Motion.  *Ward v. Bell*, No. 2:09-cv-12669, 2009 WL 2170172, at *2 (E.D. Mich. July 20, 2009).

After exhausting his state-court remedies, Petitioner returned to this Court, as directed, and filed a Motion to Lift the Stay.  Pet'r's Mot. to Lift Stay, Nov. 19, 2009, ECF No. 6.  The Court granted the Motion, directed the Clerk of the Court to re-open the case and serve a copy of the Amended Petition on Respondent.  The Court also ordered Respondent to file an Answer to the Amended Petition and the necessary Rule 5 materials within six months from the date of its Order.  Op. & Order Granting Mot., Mar. 11, 2010, ECF No. 9.  Subsequently, it was brought to the Court's attention that Respondent was never served with that Order.  The Court then re-issued an Order, with one difference.  This time, the Court directed Respondent to file his Answer and the Rule 5 materials within sixty days of its Order.  Order Directing Serv., Mar. 31, 2011, ECF No. 22.  Respondent complied.  Resp't's Resp., July 29, 2011, ECF No. 31 & 32.  The Court finds that Petitioner's case is now ripe for consideration.

After a review of the pleadings, the Court concludes that Petitioner's convictions and sentences are constitutionally sound.  Therefore, the Court denies the Petition.  The Court also declines to issue Petitioner a Certificate of Appealability but will grant him permission to file an Application for Leave to Proceed *In Forma Pauperis* on Appeal,

2

should he choose to appeal the Court's decision.

## II.  BACKGROUND

Petitioner's troubles in this case stem from the sexual assault of his girlfriend's two daughters, K.W., eleven-years old, and J.W.,[2] thirteen-years old.  At the time of the incidents, Petitioner was living with the girls' mother.  Trial testimony revealed the following pertinent facts.

K.W., who was diagnosed as a high-functioning-autistic child, testified that she and her sister played games with Petitioner.  Several times he asked her to rub his back with lotion.  She described one incident where he placed his penis on her buttocks and moved it up and down; her clothes got wet.  She told a friend and a teacher.  Another time, while in the bedroom, he told her to lie on her stomach; she felt his penis touching her but never actually saw his penis.

J.W. testified that Petitioner repeatedly asked her to come into his room to talk about sex and told her what to do if someone tried to have sex with her.  She described an incident where he also asked her to lie on the bed.  He climbed on her back and rubbed his groin against her buttocks.  She said he exposed himself to her.  She told her mother.

J.W. testified to an incident where Petitioner touched her vagina.  He told her he was looking for "hairs down there, and he was looking to see if I was ripped."  Trial Tr. vol. I, 151 Aug. 12, 2003, ECF No. 32-2, 520.  She also described an incident where he

---

[2]Because the victims were minors, the Court refers to them by their initials.

3

spread her vagina apart and rubbed his two fingers across.  She told him she was scared that he would do something to her.  Petitioner touched his penis against her vagina and told her that it was impossible for him to do anything to her because his penis would not fit.  He kept moving his penis against her until he left a "gooey" wet spot on her pants.  Trial Tr. vol. I, 159, ECF 32-2, 528.

Petitioner testified.  He said he wrestled with the girls and that it was possible his groin rubbed against them at times.  Often, there was a glass of liquid nearby that would spill onto them while they wrestled.  He admitted that J.W. saw his penis once when he was getting out of bed.  He also admitted he asked her to remove her panties.  He said he spread her vagina open because he was looking to see if she had an infection or if she had injured herself while inserting a tampon.

The jury found Petitioner guilty as charged.  He was sentenced to nine to eighteen years for the CSC I conviction and seven-and-one-half to fifteen years for each of the CSC II convictions.

Following his sentencing, Petitioner filed an appeal with the Michigan Court of Appeals, raising a single claim concerning the sufficiency of the evidence with respect to his conviction for CSC I; he did not appeal his convictions for CSC II.  The Court of Appeals affirmed his convictions.  *People v. Ward,* No. 251407, 2005 WL 473935 (Mich. Ct. App. Mar. 1, 2005).  Petitioner then filed an Application for Leave to Appeal the Court of Appeals's decision with the Michigan Supreme Court, raising the same claim.  The Application was denied on October 31, 2005.  *People v. Ward*, 705 N.W.2d 133

4

(Mich. 2005) (unpublished table decision).

Petitioner did not file a Petition for a Writ of Certiorari with the United States Supreme Court. Rather, he filed a Motion for Relief from Judgment with the Wayne County Circuit Court, raising a claim concerning newly-discovered evidence, a letter J.W. wrote to him in prison, and claims concerning the effectiveness of trial and appellate counsel. The trial court ordered the People to file a Response to Petitioner's claim that trial counsel was ineffective for failing to object to the correct scoring of his sentencing guidelines and in failing to verify the Presentence Report as accurate. The People filed a Response, conceding that the Presentence Report contained several incorrect assertions and that Petitioner was entitled to an additional sixteen days credit on his sentence. Subsequently, the trial court granted Petitioner's request for resentencing but in all other respects denied the Motion. *People v. Ward*, No. 03-006707-01 (3rd Cir. Ct. Wayne Cnty. Sept. 20, 2007).

On January 30, 2008, Petitioner was resentenced to eighty-one months to eighteen years for his CSC I conviction and eighty-one months to fifteen years for the five counts of CSC II convictions.

Following, Petitioner filed an appeal from the trial court's decision with the Michigan Court of Appeals, arguing that he was entitled to resentencing because the guidelines were scored inaccurately and the trial court failed to correct the errors in the Presentence Report. The Court of Appeals affirmed but remanded for the correction of his Sentencing-Information and Presentence Reports. *People v. Ward*, No. 284314, 2009

5

WL 1360991, at *1, 4 (Mich. Ct. App. May 12, 2009).  Petitioner filed an Application for

Leave to Appeal that decision with the Michigan Supreme Court, which was denied on

October 26, 2009.  *People v. Ward*, 773 N.W.2d 681 (Mich. 2009) (unpublished table

decision).

Petitioner filed the pending Petition on July 7, 2009, raising all the claims raised

on direct review in the state-appellate courts and in his Motion for Relief from Judgment

with the trial court and subsequent appeals.

## III.  DISCUSSION

### A.  Standard of Review for Habeas Cases

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes

the following standard of review for habeas cases.  Section 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law, or if the state court decides a case differently than the Supreme Court has

on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06

(2000). An "unreasonable application" occurs when a state court has applied clearly established federal law in an objectively unreasonable manner. *Id.* at 409. Therefore, a federal-habeas court may not issue a writ if it concludes the state court applied clearly established federal law merely erroneously or incorrectly. *Id.* at 411. The application must be unreasonable. *Id.*

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 776, ---, 130 S.Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

"[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. ---, ---, 131 S.Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 131 S.Ct. at 786 (citation omitted). Recently, the Sixth Circuit observed that "[t]his is a very high standard, which the [Supreme] Court freely acknowledges." *Peak v. Webb*, 673 F.3d 465, 472 (6th Cir. 2012). The *Peak* Court suggested that *Harrington* holds that the review standard "is even

7

more constricted than AEDPA's plain language already suggests." *Id.* Thus, pursuant to section 2254(d), "[a] habeas court must determine what arguments or theories supported or . . . could have supported [] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* (internal quotation omitted). The Court also recognizes that habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. ---, ---, 131 S.Ct. 1388, 1398 (2011).

With those standards in mind, the Court proceeds to address Petitioner's claims.

### B.  Petitioner's Claims

### 1.  Insufficient-evidence claim

In his first habeas claim, Petitioner asserts that the evidence was insufficient to support his conviction for CSC I. Respondent argues that the claim lacks merit. The Court agrees with Respondent.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). "Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)). First, the Court must determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the

8

essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443

U.S. 307, 319 (1979) (emphasis in original) (citation omitted); *see also McKenzie v.*

*Smith*, 326 F.3d 721, 727 (6th Cir. 2003) (same).  "In doing so, [the Court does] not

reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment

for that of the jury.  *Brown*, 567 F.3d at 205 (citation omitted).  Second, if the Court were

"to conclude that a rational trier of fact could *not* have found a petitioner guilty beyond a

reasonable doubt, on habeas review, [the Court] must still defer to the *state appellate*

*court's* sufficiency determination as long as it is not unreasonable."  *Id.* (emphasis in

original) (citing 28 U.S.C. § 2254(d)(2)).  "[Section 2254(d)] gives habeas courts no

license to redetermine credibility of witnesses whose demeanor has been observed by the

state trial court, but not by them."  *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).  "A

federal habeas court faced with a record of historical facts that supports conflicting

inferences must presume–even if it does not affirmatively appear in the record–that the

trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that

resolution."  *Jackson*, 443 U.S. at 326; *see also McKenzie*, 326 F.3d at 727 (it is the

province of the fact finder to weigh the probative value of the evidence and resolve any

conflicts in testimony); *see also Farley v. Lafler*, 193 F. App'x 543, 548 (6th Cir. 2006)

(same).  Further, "the [*Jackson*] standard must be applied 'with explicit reference to the

substantive elements of the criminal offense as defined by state law."  *Jackson*, 443 U.S.

at 324 n.16.

   Under Michigan law, CSC I involves acts of sexual penetration under the

9

circumstances delineated by the statute, including acts with a person under thirteen years of age.  MCL 750.520b(1)(a).  The statute defines "sexual penetration" as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required."  MCL 750.520a(r).[3]

The Michigan Court of Appeals, the last court to issue a reasoned decision with respect to this issue, stated:

> In reviewing a sufficiency of the evidence question, we view the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could conclude that the elements of the offense were proven beyond a reasonable doubt.  We do not interfere with the jury's role of determining the weight of the evidence or the credibility of witnesses.  A trier of fact may make reasonable inferences from direct or circumstantial evidence in the record.
>
> * * *
>
> Defendant argues that insufficient evidence was produced to support his conviction of CSC I.  We disagree and affirm.  The testimony of a sexual assault complainant need not be corroborated by other evidence, MCL 750.520h, and the jury was entitled to accept complainant's testimony as credible.  Complainant's testimony supported an inference that defendant's thumbs penetrated her vagina.  Slight penetration is sufficient to support a conviction of CSC I.  The evidence, viewed in a light most favorable to the prosecution, was sufficient to support defendant's conviction of CSC I.

*Ward*, 2005 WL 473935, at *1 (footnote and citations omitted).

---

[3]At the time of Petitioner's conviction, the applicable statute was MCL 750.520a(o).  It was amended effective July 1, 2008, as Michigan Compiles Laws 750.520a(r).

10

Although not specifically citing *Jackson*, it is clear that the Court of Appeals reviewed this claim using that standard. A review of the record supports its decision. The jury heard the testimony of J.W. and Petitioner and was able to access the credibility of both witnesses in order to make its determination. Further, the Court notes, as did the Court of Appeals, that a victim's testimony alone can be constitutionally sufficient to sustain a conviction. *See Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008) (citing cases); *O'Hara v. Brigano*, 499 F.3d 492, 500 (6th Cir. 2007) (victim's testimony sufficient even though not corroborated by witnesses or physical evidence).

With that, the Court concludes that the Court of Appeals did not unreasonably apply the *Jackson* standard. The prosecution presented sufficient evidence for the jury to conclude beyond a reasonable doubt that Petitioner was guilty of CSC I with respect to J.W. Habeas relief is not warranted.

### 2. Ineffective-assistance-of-counsel claims

In claims two through seven, Petitioner alleges that trial counsel was ineffective in various ways. He raised the majority of these claims for the first time when he filed his Motion for Relief from Judgment with the state trial court. Thus, Respondent argues that some of the claims are either unexhausted or procedurally defaulted.

First, even assuming that Petitioner has not properly exhausted all of his habeas claims in the state courts, the Court declines to dismiss the Petition on such a basis. While the exhaustion requirement is strictly enforced, it is not a jurisdictional prerequisite for bringing a habeas petition. *See Granberry v. Greer*, 481 U.S. 129, 134-35 (1987);

11

*Rockwell v. Yukins*, 217 F.3d 421, 423 (6th Cir. 2000).  For example, an unexhausted claim may be addressed if pursuit of a state-court remedy would be futile, *see Witzke v. Withrow*, 702 F. Supp. 1338, 1348 (W.D. Mich. 1988), or if the unexhausted claim is meritless such that addressing it would be efficient and not offend federal-state comity. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *see also* 28 U.S.C. § 2254(b)(2) (habeas petition may be denied on the merits despite the failure to exhaust state-court remedies).  Such is the case here.  Because Petitioner has already filed a Motion for Relief from Judgment with the state-trial court, pursuit of his unexhausted claims in state court would be futile for him.  See MCL 6.502(G) (prohibiting a defendant from filing a second motion for relief from judgment unless there is a retroactive change in the law that occurred after the filing of the first or a claim of new evidence that was not discovered before the first such motion).

Second, as to any procedural default, it is well-settled that federal courts on habeas review are not required to address a procedural-default issue before deciding against the petitioner on the merits.  *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).  "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."  *Id.* at 525.  In this case, the substantive issues are easier to resolve.

Accordingly, the Court shall proceed to address the merits of Petitioner's ineffective-assistance-of-counsel claims.

12

### a. *Strickland* standard

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687.  Second, the petitioner must establish that counsel's deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id.*

As to the performance prong, Petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance.  *Strickland*, 466 U.S. at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  *Id.* at 689.  Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Id.* at 690.  Petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.  *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome.  *Id.*  "On balance, the benchmark for judging any claim of ineffectiveness must be whether

13

counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective-assistance-of-counsel claims arising from state-criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state-appellate courts reviewing their performance. "The standards created by *Strickland* and [section] 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S.Ct. at 788 (internal and end citations omitted). "When [section] 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard. *Id.*

### b. Counsel's failure to advance a medical-diagnosis defense

In his second habeas claim, Petitioner argues that counsel was ineffective for failing to advance a medical-diagnosis defense to the CSC I charge. The Michigan Court of Appeals addressed this claim, stating:

> Defendant testified that he examined victim one's vagina for injury, but that he did not touch her, instead motioning with his thumbs for her to open her vagina. An element of the offense of first-degree criminal sexual conduct is that it be sexual penetration, and clearly penetration for legitimate medical purposes is not sexual penetration. Defense counsel did not argue that the touching was for medical purposes, but instead argued that there was no penetration. Again, "this Court will not substitute its judgment for that of counsel in matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." Further, defendant cannot establish that he was prejudiced by the failure to make this argument where he made the argument himself during his testimony. The trial court did not err in finding

14

that defendant failed to establish ineffective assistance of counsel.

*Ward*, 2009 WL 1360991, at *3 (citations omitted).

The Court finds that the Court of Appeals's decision is neither contrary to nor an

unreasonable application of *Strickland*. Petitioner has not established that counsel erred

or that he was prejudiced by counsel's conduct. Counsel's decision to argue that there

was no penetration in regard to J.W. was a matter of trial strategy. The fact that counsel's

strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See*

*Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) (ineffective-assistance-of-counsel

claim cannot survive so long as the decisions of a defendant's trial counsel were

reasonable even if mistaken). Thus, Petitioner has failed to meet his burden under the

*Strickland* standard and habeas relief is not warranted.

### c.  Counsel's failure to file pretrial motions to amend the information and exclude similar-acts evidence

In his third claim, Petitioner claims that counsel was ineffective for failing to file a

pretrial motion to amend the information to comply with the time frame to which the

victims testified at the preliminary examination.

With respect to this claim, the trial court clearly denied relief under *Strickland*,

though not specifically citing the case. The trial court determined that state law did not

require the specification of an exact time in the information and that the time was not a

material element in a CSC case, especially when the victim is a child. *Ward*, No. 03-

006707-01, at 8-9. In regard to defense counsel failing to move to exclude other-acts

evidence, the trial court found that the other-acts evidence in the case was admissible under Michigan's Rules of Evidence in order to show a plan or system in committing the sexual acts and absence of mistake or accident. *Id.*

Because the trial court found that the information in this case was sufficient and that other-acts evidence would have been admissible, its finding that trial counsel was not constitutionally deficient was not unreasonable. Counsel cannot be deemed ineffective for failing to raise meritless objections. *See Walls v. Romanowski*, No. 2:-6-CV-14203, 2013 WL 210735, at *7 (E.D. Mich. Jan. 18, 2013) (Tarnow, J.). Accordingly, Petitioner is not entitled to habeas relief on this claim.

### d. Counsel's failure to object to prosecutor's conduct during closing argument

In this claim, Petitioner argues that counsel was ineffective for failing to object to the prosecutor's conduct during closing argument, stating specifically that she referred to facts not in evidence, made knowingly false statements, improperly vouched for K.W., and made improper argument to elicit sympathy for her. Before deciding whether counsel was ineffective in this regard, the Court must first decide whether the prosecutor's conduct was improper.

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). However, "[c]laims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)

16

(citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  Prosecutorial misconduct will form the basis for a new trial and habeas relief only if the alleged misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (same).  "[T]o constitute the denial of a fair trial," the misconduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citations and internal quotes omitted); *Byrd v. Collins*, 209 F.3d 486, 529-30 (6th Cir. 2000) (same).  "The Court must examine the fairness of the trial, not the culpability of the prosecutor." *Pritchett*, 117 F.3d at 964 (citations and internal quotes omitted); *see also Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993) (same).

When analyzing a claim of prosecutorial misconduct, a court must initially decide whether the challenged statements were improper. *Slagle v. Bagley*, 457 F.3d 501, 515-16 (6th Cir. 2006).  If the conduct is improper, the district court must then examine whether the statements or remarks are so flagrant as to constitute a denial of due process and warrant granting a writ. *Id.*  In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused.  *Serra*, 4 F.3d at 1355-56.

17

The Michigan Court of Appeals rejected Petitioner's claim as follows:

> Prosecutors may not make statements that are not supported by the facts in evidence, but may make arguments based on the evidence and reasonable inferences that arise from the evidence. Although there were instances where the prosecutor misstated the facts in evidence, the misstatements were minor and no instance was so prejudicial to defendant that it was not cured by the trial court's instruction that the prosecution's argument was not evidence. Because the prosecutor's misstatements of the facts were not prejudicial, defendant was not prejudiced by his counsel's failure to object to the alleged prosecutorial misconduct.

*Ward*, 2009 WL 1360991, at *3 (citations omitted).

When addressing this claim in Petitioner's Motion for Relief from Judgment, the

trial court also found his argument without merit:

> Although the prosecuting attorney did at times confuse [K.W.'s] testimony with [J.W.'s] testimony during her closing argument, there is no evidence that this was a deliberate attempt to "skew the evidence more in favor" as alleged by Defendant. The prosecutor properly argued logical inferences from the presented evidence. Also, the Court instructed the jurors that they must decide the case on the evidence and not let sympathy or prejudice influence their decision and that the remarks of counsel were not evidence. These instructions were sufficient to eliminate any prejudice that might have resulted from the prosecutor's remarks. Therefore, Defendant has failed to demonstrate prejudice from trial counsel's failure to object to the prosecutor's comments during closing argument.

*Ward*, No. 03-006707-01, at 10-11 (citations omitted).

These decisions are neither contrary to nor an unreasonable application of the

*Donnelly/Darden* standards.

First, while the prosecutor appears to have confused some testimony, erroneously

stating that K.W. testified that Petitioner's pants were wet [Trial Tr. vol. II, 70, ECF No.

32-3, 605], the prosecutor's comments were brief and isolated. With respect to that

18

comment, trial counsel may have reasonably decided to not draw attention to the

comment or may have reasonably relied on the trial court's instructions to the jury to cure

any misstatement by the prosecutor.

Second, the prosecutor's statement that K.W.'s testimony was corroborated by

J.W. was a proper and reasonable argument to make in light of the evidence presented.

Prosecutors "must be given leeway to argue reasonable inferences from the evidence."

*United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996). The prosecutor was not

improperly bolstering K.W.'s testimony. Rather, she was arguing "reasonable inferences

from the evidence." *Id.*

Third, the prosecutor did not improperly elicit sympathy for K.W. Rather, K.W.'s

mother testified that she was autistic and the prosecutor simply referenced that in her

closing and reasonably argued that perhaps that was the reason that Petitioner had

targeted her. Moreover, the trial court instructed the jury that they must not "let

sympathy or prejudice influence" their decision. Trial Tr. vol. II, 81, ECF No. 32-2, 616.

"A jury is presumed to follow [the trial court's] instructions." *Weeks v. Angelone*, 528

U.S. 225, 234 (2000). Thus, the Court finds that Petitioner has failed to show prejudice

from trial counsel's failure to object to this portion of the prosecutor's argument.

Additionally, the prosecutor's statement that K.W., instead J.W., said that she did

not tell anyone because she did not want to get whipped was an inadvertent misstatement

that was brief and isolated. In light of the trial court's instructions to the jury, that an

attorney's arguments are not evidence, Petitioner again fails to demonstrate deficient

19

performance or prejudice from counsel's failure to object.

Finally, Petitioner has failed to show that the prosecutor was improperly vouching. The record reveals that she was making appropriate argument on the basis of the evidence that was presented.

Thus, because Petitioner cannot show that the prosecutor's conduct was improper, trial counsel cannot be deemed deficient for failing to make futile objections or motions. *See*, e.g., *Steverson*, 230 F.3d at 225.

Having reviewed the record and, given the significant evidence of Petitioner's guilt presented at trial, the Court finds that he has failed to establish that trial counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on these claims.

### e.  Counsel's failure to cross-examine, impeach, and recall the victims' mother

In claim five, Petitioner argues that the trial counsel was ineffective for failing to effectively cross-examine, impeach, and recall on rebuttal the victims' mother. Decisions as to what evidence to present and whether to call certain witnesses are presumed to be a matter of trial strategy, and the failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *see also Dell v. Straub*, 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002) (Friedman, J.) (impeachment strategy is a matter of trial tactics and such decisions are not ineffective assistance of counsel because in retrospect better tactics may have been available).

In addressing and denying this claim in Petitioner's Motion for Relief from

20

Judgment, the trial court stated:

> The Court finds that Defendant's arguments fail because Defendant was aware of and could have testified to each of these alleged facts at trial, yet, he failed to do so despite being allowed to testify in a narrative fashion.

> Further, as stated previously, time is not a material element in a criminal sexual conduct case involving a child.

*Ward*, No. 03-006707-01, at 7 (citation omitted).

According to Petitioner, counsel should have introduced his work record to impeach the mother's credibility as to how much time he spent at home with the girls. He also argues that counsel should have recalled her to impeach the girls' testimony about the actual times of the incidents. However, the record reveals that trial counsel thoroughly cross-examined the mother, getting her to testify that Petitioner wrestled with the girls and that she never noticed any abnormal behavior on the part of the girls. Trial Tr. vol. I, 109, ECF No. 32-2, 478-79. Counsel even got her to acknowledge that the relationship between Petitioner and the girls was normal and healthy. *Id.*

As stated by the trial court, Petitioner could have testified himself to each of these areas, yet he failed to do so. Thus, the Court finds that the trial court's decision is neither contrary to nor an unreasonable application of the *Strickland* standard. Habeas relief in not warranted.

### f. Counsel's failure to impeach J.W.

Petitioner also claims that counsel was ineffective for failing to impeach J.W.'s credibility with her prior testimony and police statements.

21

With respect to this issue, both the trial court and the Court of Appeals found that, although there might have been some minor discrepancies regarding the events, Petitioner did not suffer prejudice because, as the Court of Appeals and the trial court stated, in criminal-sexual-conduct cases involving minor children, time is not of the essence nor is it a material element of the offense. *Ward*, 2009 WL 1360991, at *2 (citations omitted); *Ward*, No. 03-006707-01, at 6-7 (citations omitted).

As noted, impeachment tactics are a matter of trial strategy, which is entitled to deference. *Dell*, 194 F. Supp. 2d at 651. The Court does not believe that the result of the proceeding would have been different if defense counsel had persisted in pointing out these inconsistencies in the testimony. Habeas relief is not warranted on this claim.

### g. Counsel's ineffectiveness during closing argument

In his seventh habeas claim, Petitioner argues that counsel was ineffective for failing to address the CSC II charges and ask for a lesser-included instruction on CSC I during closing argument.

The Court of Appeals addressed this claim, stating:

Although brief, counsel noted in his closing that defendant denied all of the charges and that the case hung on the credibility of the witnesses and then specifically addressed the first-degree criminal sexual conduct charge. "This Court will not substitute its judgment for that of counsel in matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." Defendant has not established that counsel's performance fell below an objective standard of reasonableness or that he was prejudiced by the closing argument.

*Ward*, 2009 WL 1360991, at *3 (citations omitted).

22

The trial court likewise found this claim without merit:

> Here, trial counsel did not concede Defendant's guilt, but stressed to the jury that the only act of first-degree CSC charged was the act involving Defendant inspecting [J.W.'s] genital area, and not another [J.W.] testified about.  Trial counsel stated that, if the jury believed the complainant that Defendant did touch [J.W.] as described, Defendant was guilty of only second-degree CSC, and not first-degree CSC as charged.  Counsel further stated that the case was a credibility contest between the girls and Defendant and that Defendant maintained his innocence.  (TT II, pp 76-79).  Therefore, trial counsel was not ineffective.

*Ward*, No. 03-006707-01, at 11, ECF No. 32-11.

The Court finds that the state courts' decisions were reasonable.  Counsel's strategy may have been to argue that Petitioner was guilty of CSC II, the lesser charge, with respect to J.W., as opposed to CSC I.  Although counsel's strategy may have been a "walking-on-the-border technique," it did not amount to a violation of the Sixth Amendment right to the effective assistance of counsel.  Conceding guilt as a strategy for avoiding conviction of a greater offense is not generally considered ineffective assistance of counsel.  *See Poindexter v. Mitchell*, 454 F.3d 564 (6th Cir. 2006) (concession by defense counsel that petitioner was guilty of murder but not guilty of aggravated murder did not amount to ineffective assistance of counsel).  Defense counsel's strategy was reasonable in light of the significant evidence against Petitioner, and therefore, the Court concludes that counsel's strategy did not fall below an "objective standard of reasonableness."  *Strickland*, 466 U.S. at 688.  It is "[r]are" that constitutionally competent representation will require "any one technique or approach."  *Harrington*, 131 S.Ct. at 779.  Accordingly, Petitioner is not entitled to relief on this claim.

23

### h.  Counsel failed to object to the scoring of Petitioner's sentencing guidelines

In his eighth habeas claim, Petitioner alleges that trial counsel was ineffective for failing to object to the correct scoring of his sentencing guidelines and in failing to verify the Presentence Report as accurate.  As noted, *supra*, Petitioner raised this claim in his Motion for Relief from Judgment.  The trial court requested the People to file an Answer to Petitioner's claim.  In its Answer, the State conceded that there were errors at sentencing which affected Petitioner's sentence.  Specifically, the State conceded that the Presentence Report contained several incorrect assertions and that Petitioner was entitled to an additional sixteen days credit on his sentence.  The trial subsequently granted Petitioner relief and he was resentenced.  Following his appeal, the Court of Appeals remanded the matter for correction of the inaccuracies in the Sentencing-Information Report and the corrections of errors in his Presentence Report.  Thus, because Petitioner was granted relief, this claim is now moot.

However, to the extent that Petitioner is still challenging the scoring of his guidelines, the claim is non-cognizable on habeas review.  An argument based on a perceived error or alleged violation of state law fails to state a claim on which habeas relief may be granted.  *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000).  Any error by the trial court in calculating his guideline score or in departing above his sentencing-guidelines range alone would not merit habeas relief.  *Id.*

### 3.  Actual-innocence claim

24

In his ninth habeas claim, Petitioner alleges that the trial court erred in failing to remand his case for a new trial on the basis of newly-discovered evidence that the victims testified falsely.  The evidence Petitioner refers to is a letter written to him in prison from J.W., in which she states "I'm really sorry you got put in jail.  I was not the one who told it was [K.W.], but you did not even do that stuff to use (sic) in the first place."  See Pet'r's Mot. for Relief from J., ECF No. 32-9, 821.  Petitioner appears to be arguing that the letter suggests that he is actually innocent.

In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that claims of actual innocence based on newly-discovered evidence fail to state a claim for federal-habeas relief absent an independent constitutional violation occurring in the underlying state-criminal proceeding.  *See also Cress v. Palmer*, 484 F.3d 844, 854-55 (6th Cir. 2007) (citing cases); *see also House v. Bell*, 547 U.S. 518 (2006) (same).  Federal-habeas courts sit to ensure that individuals are not imprisoned in violation of the constitution, not to correct errors of fact.  *Id.*; *see also Hence v. Smith*, 37 F. Supp. 2d 970, 980 (E.D. Mich. 1999) (Gadola, J.) (same).

Further, the state trial court and the Court of Appeals both denied this claim, finding that J.W.'s letter was insufficient to make a different result at trial probable. *Ward*, 03-006707-01, at 4-5; *Ward*, 2009 WL 1360991, at *3-4.

Accordingly, Petitioner is not entitled to habeas relief on this claim.

### 4.  Challenges to the Michigan Parole Board denying Petitioner parole

In his Amended Habeas Petition, Petitioner appears to allege that the Michigan

25

Parole Board erred in denying him parole. Here, Petitioner fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole. Prisoners do not have a constitutional right to be conditionally released before the expiration of a valid sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979); *see also Board of Pardons v. Allen*, 482 U.S. 369, 377 n.8 (1987) (same). Quite simply, there is no federal constitutional right to parole. *Lee v. Withrow*, 76 F. Supp. 2d 789, 792 (E.D. Mich. 1999) (Duggan, J.).

With that, the Court concludes that Petitioner is not entitled to habeas relief.

### C. Certificate of Appealability

Before Petitioner may appeal this Court's decision, a Certificate of Appealability must be issued. Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a Certificate of Appealability is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings, which was amended as of December 1, 2009, requires that a district court must "issue or deny a [Certificate of Appealability] when it enters a final order adverse to the applicant . . . . If the court issues a [C]ertificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11, Rules Governing Section 2254 Proceedings.

A Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a Certificate of Appealability indicating which issues satisfy the

26

required showing or provide reasons why such a Certificate should not be issued. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b). To receive a Certificate of Appealability "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (internal quotes and citations omitted).

For the reasons stated in its Opinion and Order, the Court concludes that reasonable jurists would not find its assessment of Petitioner's claims debatable or wrong. The Court therefore declines to issue Petitioner a Certificate of Appealability.

Although the Court declines to issue Petitioner a Certificate of Appealability, the standard for granting an Application for Leave to Proceed *In Forma Pauperis* is a lower standard than the standard for Certificates of Appealability. *See Foster v. Ludwick*, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002) (Rosen, J.) (citation omitted). Where a Certificate of Appealability may only be granted if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant *in forma pauperis* status if it finds that an Appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster*, 208 F. Supp. 2d at 765.

The Court concludes that an Appeal could be taken in good faith and Petitioner may proceed *in forma pauperis* on appeal. Also, because Petitioner was granted *in*

*forma pauperis* status in this Court, he may proceed on appeal without further

authorization.  Fed. R. App. P. 24(a)(3).

### IV.  CONCLUSION

Accordingly, IT IS ORDERED that the "Petition for Writ of Habeas Corpus"

[ECF No. 1] is DENIED.

IT IS FURTHER ORDERED that the Court declines to issue Petitioner a

Certificate of Appealability but will GRANT him permission for an Application for

Leave to Proceed *In Forma Pauperis* On Appeal.


                                       s/Lawrence P. Zatkoff
                                       LAWRENCE P. ZATKOFF
                                       UNITED STATES DISTRICT JUDGE

DATED: March 28, 2013

28